ORIGINAL

RECEIVED AND FILED

APR 23  12 16 PM '03

SHEA & CARLYON, LTD.
CANDACE C. CARLYON, ESQ. (SBN 002666)
SHAWN W. MILLER, ESQ. (SBN 007825)
233 S. Fourth Street, Suite 200
Las Vegas, Nevada 89101
Telephone: (702) 471-7432
Facsimile: (702) 471-7435
Email: ccarlyon@sheacarlyon.com
       smiller@sheacarlyon.com

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.
MALHAR S. PAGAY, ESQ. (CA SBN 189289)
Three Embarcadero Center, Suite 1020
San Francisco, California 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
Email: mpagay@pszyjw.com

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| In re | ) Bankruptcy Case No. BK-S-00-10533-LBR |
|---|---|
| AGRIBIOTECH, INC., a Nevada corporation, | ) Chapter 11 |
| Debtor. | ) Jointly Administered With: |
| ☐ Affects All Debtors | ) No. BK-S-00-10534-LBR (AgriBioTech Canada) |
| | ) No. BK-S-00-10535-LBR (Las Vegas Fertilizer Co. |
| ☐ Affects AGRIOBIOTECH CANADA, INC., a Canadian corporation | ) No. BK-S-00-10536-LBR (Garden West Distrbs., Inc.) |
| | ) No. BK-S-00-10537-LBR (Geo W. Hill & Co., Inc.) |
| ☐ Affects LAS VEGAS FERTILIZER CO., a Nevada corporation | ) **CREDITOR TRUSTEE'S TRIAL STATEMENT RE: OBJECTION TO CLAIM OF REGEN CAPITAL I, INC.** |
| ☐ Affects GARDEN WEST DISTRIBUTORS, INC., an Arizona corporation. | ) Pre-Trial Conference: |
| | )   Date: April 24, 2003 |
| | )   Time: 1:30 p.m. |
| ☐ Affects GEO W. HILL & CO., INC., a Kentucky corporation. | ) Trial: |
| | )   Date: May 5, 2003 |
| | )   Time: 9:30 a.m. |

Anthony H.N. Schnelling, Trustee of the AgriBioTech Creditors Trust (the "Trustee"), by and through his counsel, Malhar S. Pagay, Esq. and Shawn W. Miller, Esq., hereby files this Trial Statement pursuant to LR 7016(d)(1) and the <u>Standard Discovery Plan and Scheduling Order Re: Pre-Trial Matters and Trial (Objection to Claim of Regen Capital I, Inc.)</u>, entered on January 22, 2003.

### A. **Statement of the Case**

The Bankruptcy Court must determine at trial whether the late filed claim of AT&T Corp. ("AT&T"), assigned to Regen Capital I, Inc. ("Regen"), should be allowed.

#### 1. **Background**

##### a. **The Commencement of Debtors' Bankruptcy Cases**

On January 25, 2000 (the "Petition Date"), AgriBioTech, Inc., a Nevada corporation ("ABT"), and its affiliates (collectively, the "Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").

##### b. **The Bar Date**

The Court established July 5, 2000 (the "Claims Bar Date"), as the bar date by which parties were to file proofs of claim against the Debtors' bankruptcy estates. On February 8, 2000, the Debtors provided notice of the Claims Bar Date to all parties in interest, including AT&T and its affiliates at fifty-six (56) separate addresses. Proof of service has been certified and filed with the Court.

In addition to receiving notice of the Claims Bar Date, AT&T was aware of the ABT bankruptcy cases and was served with additional pleadings and papers, including Debtors' motion regarding adequate assurance of payment for future utility services. AT&T personnel

SHEA & CARLYON, LTD.
233 S. Fourth Street, Suite 200
Las Vegas, Nevada 89101
(702) 471-7432

also communicated with ABT employees (and vice versa) during the pendency of the bankruptcy cases. The July 5, 2000 deadline passed and AT&T failed to file a proof of claim.

### c.  The Claim

On August 28, 2000, nearly two months after the Claims Bar Date, AT&T, through its administrative agent, filed a proof of claim in Debtors' bankruptcy cases, asserting a $279,966.42 general unsecured claim (Claim Number 4059). Simultaneous with the filing of the proof of claim, Regen filed a <u>Notice of Transfer of Claim Pursuant to F.R.B.P. 3001(E)(2) or (4)</u> and <u>Notice of Assignment of Claim</u>, advising of the transfer of AT&T's claim to Regen.

### d.  The Plan, Creation of the Creditor Trust and the Creditor Trustee

On April 10, 2001, the Court entered its <u>Order Confirming First Amended Joint Plan of AgriBioTech, Inc., Las Vegas Fertilizer Co., Garden West Distributors and Geo W. Hill & Co., Inc.</u> (the "Confirmation Order") confirming <u>First Amended Joint Plan of Reorganization of AgriBioTech, Inc., Las Vegas Fertilizer Co., Garden West Distributors and Geo W. Hill & Co., Inc.</u> (the "Plan"), pursuant to which Debtors' bankruptcy estates were substantively consolidated. Pursuant to the Plan and paragraph 17 of the Confirmation Order, the Trustee is the successor-in-interest to all assets, rights and claims of ABT's bankruptcy estates. Pursuant to paragraph 15 of the Confirmation Order, Anthony H.N. Schnelling was appointed Trustee.

Also, the Plan provides that the allowed amount of a claim when "no proof of Claim has been **timely** filed" is the amount "which has been scheduled by the Debtors" unless further allowed by the Bankruptcy Court or under the Plan. Plan § 1.21. The amount of AT&T's claim as listed in Debtors' Statements and Schedules was $76,444.79.

///

///

SHEA & CARLYON, LTD.
233 S. Fourth Street, Suite 200
Las Vegas, Nevada 89101
(702) 471-7432

3

e.  **The Objection**

On January 28, 2002, the Trustee filed an objection in respect to certain general unsecured claims, including the claim of Regen (the "Objection"). With respect to Regen's claim, the Trustee alleged that it was not timely filed and that the amount set forth therein did not agree with the amounts allegedly owed to AT&T as set forth in the Debtors' books and records. Regen filed a response to the Objection on March 1, 2002, alleging that the Debtors' schedules were inaccurate, that Regen was entitled to the amount alleged in its proof of claim and that the Trustee could not demonstrate that AT&T received notice of the Claims Bar Date.

2.  **AT&T's Disregard of Bankruptcy Court Imposed Bar Dates**

The Regen claim is not the only claim tardily filed by AT&T in the ABT bankruptcy cases. On August 1, 2002, more than a year after the passage of the Administrative Claims Bar Date imposed by the Plan, AT&T filed an administrative claim of over $420,000.00 (the "AT&T Administrative Claim"). The Trustee objected to the AT&T Administrative Claim on the grounds that it was not timely filed. The AT&T Administrative Claim was withdrawn.

Moreover, pursuant to an informal survey of active bankruptcy cases in which the Trustee's counsel's office represents the estate (or post-confirmation entity) in respect of claims objections, the Trustee's counsel has determined that AT&T and its affiliates have filed at least twelve (12) late claims in five other recent bankruptcy cases.[1] The Trustee intends to continue researching AT&T's and Regen's habitual late filing of claims and reserves the right to present such evidence at trial.

B.  **Jurisdiction**

4

28 U.S.C. § 1334(a) is the jurisdictional basis for a United States District Court's jurisdiction over a bankruptcy "case." The district court has "original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of *all civil proceedings* arising under title 11, or *arising in* or *related to* cases under title 11" (Emphasis added). 28 U.S.C. §§ 1334 (a), (b).

A bankruptcy court is a special unit of the district court and derives its authority from 28 U.S.C. § 157. Section 157(a) provides in relevant part: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or *arising in* or *related to* a case under title 11 shall be referred to the bankruptcy judges for the district" (Emphasis added). Thus, any case arising in or related to a case under title 11 that the district court has jurisdiction over may be heard by the bankruptcy court. Furthermore, 28 U.S.C. § 157(b) provides that: "Bankruptcy judges may hear and determine all case under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments. See 28 U.S.C. § 157(b)(1). This is a "core" proceeding pursuant to section 157(b)(2)(B), which provides, "Core proceedings include … allowance or disallowance of claims against the estate or exemptions from property of the estate." Accordingly, jurisdiction is proper before this Court.

C.  **Stipulated Facts**

To date, the parties have not stipulated to any facts. However, the Trustee believes in good faith that the following facts are not in dispute:

---

[1] In re Covad Communications Group, Inc. (Bankr. D. Del.): 4 late claims; In re Inacom, Inc. (Bankr. D. Del.): 1 late claim; In re LogoAthletic, Inc. (Bankr. D. Del.): 1 late claim; In re Sweet Factory Group, Inc. (Bankr. D.

SHEA & CARLYON, LTD.
233 S. Fourth Street, Suite 200
Las Vegas, Nevada 89101
(702) 471-7432

5

1. The Claims Bar Date passed on July 5, 2000.

2. On August 28, 2000, fifty-four (54) days after the Bar Claim Date, AT&T, through its administrative agent, filed a proof of claim in Debtors' bankruptcy cases, asserting a $279,966.42 general unsecured claim.

3. The Debtors' Statements and Schedules list AT&T's unsecured combined claim in the amount of $76,444.79.

4. The Plan was confirmed by order of this Court entered April 10, 2001.

### D. Contested Issues of Law

#### 1. Notice

Due process requires "notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Courts uniformly presume that mail that is properly addressed, stamped and deposited in an appropriate receptacle is received by the addressee in the ordinary course of the mails. Hagner v. United States, 285 U.S. 427, 450, 52 S.Ct. 417, 419 (1932).[1] Moreover, courts consistently hold that the mere denial of receipt is not sufficient to overcome the presumption of receipt upon proper mailing. In re Buchmun, 951 F.2d 204 (9th Cir. 1991) (the Ninth Circuit Court of Appeals reiterates the need of "clear and convincing evidence" to rebut the presumption of receipt). The presumption of delivery is bolstered by the fact notices are not returned by the United States Postal Service. In re Longardner & Associates, Inc., 855 F.2d 455, 459-60 (7th Cir. 1988); See In re Longardner & Associates, Inc., 855 F.2d 455, 459-60 (7th Cir. 1988), cert. denied, 489 U.S. 1015, 109 S. Ct.

---

Del.): 1 late claim; In re Tri Valley Growers (Bankr. N.D. Cal.): 5 late claims.

[1] Furthermore, courts agree that using a P.O. Box, instead of a street address, does not weaken the presumption of receipt. See e.g., In re Horton, 149 B.R. 49, 58 (Bankr. S.D.N.Y. 1992) where the creditor argued that the debtor should have used a street address instead of the P.O. Box. In rejecting this argument, the court referred to Section 122.211 of the Postal Service Domestic Mail Manual, which states that when an envelope contains both a street address and a P.O. Box, the mail service is directed to deliver the envelope to the P.O. Box number.

SHEA & CARLYON, LTD.
233 S. Fourth Street, Suite 200
Las Vegas, Nevada 89101
(702) 471-7432

1130, 103 L.Ed.2d 191 (1989) ("although the presumption of delivery may be weakened by the absence of a zip code, … it is strengthened in this case by the fact that the notice was never returned . . ."). See also In re Ricketts, 80 B.R. 495 (Bankr. 9th Cir. 1987):

> If a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates would become unraveled. [citation omitted]. For this reason, an allegation that notice was not received does not by itself rebut the presumption of proper notice. The docket reflects and the clerk has certified that no mail bearing [movant's] name or address was returned to the clerk's office. [Movant] has presented no evidence to rebut the presumption of receipt of mail.

Under this clear and uniform case law, the Trustee has established unequivocally that AT&T received notice of the Claims Bar Date.

In addition, courts have consistently declined to excuse the filing a late claim when a creditor's failure to file a timely proof of claim is the result of its internal procedures. In re Miller, 118 B.R. 76, 80 (E.D. Penn. 1989); In re Norris Grain Co., 81 B.R. 103, 108 (Bankr. M.D. Fla. 1987). When a debtor uses the address provided by the creditor, notice is adequate. Teitelbaum v. Equitable Handbag Co., 49 B.R. 536, 540 (Bankr. S.D. N.Y. 1985); In re DaShiell, 124 B.R. 242 (Bankr. N.D. Ohio 1990). When a creditor mishandles a notice from the bankruptcy court, the "creditor is unentitled to plead lack of notice in defense of its claim." In re Kleather, 208 B.R. 406 (Bankr. S.D. Ohio 1997).

Regen may try to avoid the presumption that AT&T received the Claims Bar Date notice, by arguing that the notice was not "reasonably calculated" to apprise it of the Claims Bar Date because the Debtors allegedly sent the Claims Bar Date notice to the addresses provided by AT&T for payment purposes. To the contrary, any notices relating to the account for which payments were sent to such addresses were, therefore, "reasonably calculated" to apprise AT&T of information relating to the claim status of such accounts. Furthermore, the payment addresses are not remote destinations, which were not central to the core of AT&T's business. Quite the opposite, it was the address designated to receive the lifeblood of the

SHEA & CARLYON, LTD.
233 S. Fourth Street, Suite 200
Las Vegas, Nevada 89101
(702) 471-7432

business – payment.   Therefore, using that address was "reasonably calculated" to notify AT&T of an event – the Claims Bar Date – relating to its business accounts with the Debtors. See Kleather, supra **(the address that creditor used for processing payments of the debtor to the movant was "reasonably calculated" to apprise the creditor of the bankruptcy; notice to that address sent by debtor deemed adequate)**.

For example, in Teitelbaum v. Equitable Handbag Co. (In re Outlet Dept Stores, Inc.), 49 B.R. 536, 540 (Bankr. S.D.N.Y. 1985), the Court noted that since the debtor had used the address that the creditor had provided – which is what the Debtors did here – the notice was adequate.   See also In re DaShiell, supra **(service of process directed to the post office box the Debtor had previously used to make payments to the Bank complied with both federal and state service of process requirements)**.  Other cases repeat and apply these same principles.   Relying on Kleather, supra, the court in In re Karbel, 220 B.R. 108 (10th Cir. BAP 1998) **held that the address that the debtor had used to make its payments to the creditor was reasonably calculated to apprise the creditor of the pendency of the bankruptcy**.  Furthermore, the court noted that "the burden was on the creditor to establish that the address provided by the debtor was so incorrect as to fall short of due process." Karbel, 220 B.R. at 113.

Finally in Kleather, the Court inferred that the creditor mishandled the notice, given that use of the payment address had been reasonably calculated to reach the creditor, and stated that "when a creditor mishandles a notice from the bankruptcy court, the case law is clear that the creditor is unentitled to plead lack of notice in defense of its claim." Id. at 412.

**2.    Excusable Neglect**

The Ninth Circuit Court of Appeals has emphasized that once creditors have actual notice of the proceedings, they have an obligation to take actions in order to protect their

SHEA & CARLYON, LTD.
233 S. Fourth Street, Suite 200
Las Vegas, Nevada 89101
(702) 471-7432

claims.[1] <u>In re Price</u>, 871 F.2d 97, 99 (9th Cir. 1989); <u>In re Gregory</u>, 705 F.2d 1118, 1123 (9th Cir. 1983). Such creditors must file a proof of claim before the applicable bar date. "A bar date does not function merely as a procedural gauntlet." <u>First Fidelity Bank, N.A. v. Hooker Inves. Inc.</u>, 937 F.2d 833, 840 (2d Cir. 1991). The bar date is akin to a statute of limitations and must be strictly observed. <u>In re Keene Corp.</u>, 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995). A late-filed claim may be disallowed pursuant to section 502(b)(9) of the Bankruptcy Code.

However, a court may permit a creditor to file a tardy claim notwithstanding the bar date if such creditor successfully makes a showing of "excusable neglect," however, the heavy burden of proof is on the party seeking to make the showing. Fed. R. Bankr. P 9006(b); <u>Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd. Partnership</u>, 507 U.S. 380, 382 113 S.Ct. 1489, 1491-92 (1993).

Thus far in these proceedings, Regen has not asserted that AT&T's failure to file timely claim was the result of any "neglect" at all. Given this position, the Court should not apply the "excusable neglect" standard. See <u>In re The Grand Union Company</u>, 204 B.R. 864, 870 (D. Del. 1997):

> Excusable neglect is obviously premised on some acknowledged mistake or fault on the part of the movant. These two movants, however, do not acknowledge any mistake or default on their part since their asserted nonreceipt of the bar date notice did not require them to do anything. It is a well-established rule that the bar date notice is presumed to have been received by the creditor when, as here, the debtor offers proof that it was timely and properly mailed by the debtor. See <u>Williams v. Williams</u>, 185 B.R. 598, 599 (9th Cir. BAP 1995) [other cites omitted] And the presumption is not rebutted by a mere denial of receipt by the creditor. <u>Moody v. Bucknum (In re Bucknum)</u>, 951 F.2d 204, 207 (9th Cir. 1991) [other cites omitted] I do not read the <u>Pioneer</u> decision as suggesting a

---

[1] Moreover, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim. See e.g., <u>In re Holm</u>, 931 F.2d 620, 623 (9th Cir. 1991).

> modification of these well-established rules. Indeed, any
> modification of these rules might create serious procedural
> problems in large bankruptcy cases.

After finding that the movants in fact had received notice of the bar date, the Court in <u>Grand Union</u> denied the motion to file a late claim and refused to even review the excusable neglect factors because the movants had not in fact admitted to any neglect. The Court should do the same here based on the fact that AT&T received the Claims Bar Date Notice, but, through no fault of the Debtors', failed to meet the Claims Bar Date.

If, however, such grounds are asserted at trial, a late filed claim may be allowed only if there is "neglect" in timely filing the claim which is "excusable." <u>In re Anderson</u>, 253 B.R. 14 (Bankr E.D. Mich. 2000). Cases construing <u>Pioneer</u> confirm that it does not offer *carte blanche* for finding excusable neglect. <u>In re Rainbow Trust</u>, 179 B.R. 51, 55 (Bankr. D. Vt. 1995) ("It would be strange indeed if we were to hold that parties are not to be held accountable for their own acts and omissions"). Instead, the determination of whether a party's neglect of a deadline was excusable requires taking into "account of all relevant circumstances surrounding the party's omission," including: (1) the danger of prejudice to the debtor; (2) the length of delay and its impact on judicial proceedings; (3) the reason for the delay, including whither it was in the control of the movant; and (4) whether the movant acted in good faith. <u>Id.</u>

Regen carries the heavy burden of showing "excusable neglect" resulting in the filing of its untimely claim. Fed. R. Bankr. P 9006(b); <u>See Pioneer</u>, <u>supra</u>. Inexplicably, Regen has not produced any documents to or identified for the Trustee any individuals which would support a finding of "excusable neglect." As such, as was stated in <u>Rainbow Trust</u>, "a finding

SHEA & CARLYON, LTD.
233 S. Fourth Street, Suite 200
Las Vegas, Nevada 89101
(702) 471-7432

of excusable neglect here would be tantamount to reading 'excusable' out of the rule, throwing in the towel, and allowing any creditor to file any time it got around to it."

### E. Witnesses and Fed. R. Civ. P. 26(a)(3) Disclosures

The burden to substantiate the claim and to show "excusable neglect" as the cause for its tardy filing lies exclusively with Regen, not the Trustee. Accordingly, the Trustee does not anticipate calling any witnesses to support his case in chief. However, if the need arises, the Trustee may call the following witnesses to confirm and verify that AT&T was aware of the Claims Bar Date and the pendency of the bankruptcy proceedings.

1. Scott Dean
   ABT Creditors Trust
   120 Corporate Park Drive
   Henderson, NV 89014
   702-566-2440

2. Steve Miller
   ABT Creditors Trust, Controller
   120 Corporate Park Drive
   Henderson, NV 89014
   702-566-2440

3. Mike Crittenden
   Former ABT Database Administrator
   265 Windsong Echo Drive
   Henderson, Nevada 89012
   702-914-9521

4. Jeanette Tagliaferro
   ABT Creditors Trust, Executive Administrator
   120 Corporate Park Drive
   Henderson, NV 89014
   702-566-2440

### F. Exhibits and Documents Which May Be Used at Trial

1. Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, Deadlines and Administrative and Notice Orders

SHEA & CARLYON, LTD.
233 S. Fourth Street, Suite 200
Las Vegas, Nevada 89101
(702) 471-7432

11

2. Proof of Service re Proof of Claim Service Notice of Hearing H,O,P,D,H & A, Notice of Hearing C&S, Notice of Hearing P,S,Z,Y&J, and Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, Deadlines and Administrative and Notice Orders.

3. Emergency Motion by Debtor for Entry of Order Determining Adequate Assurance of Payment for Future Utility Services.

4. Certificate of Service for Hearing Notice of Motion for Entry of Order Determining Adequate Assurance of Payment for Future Utility Services.

5. Statement and Schedules of Debtors

6. Proof of Claim 4059

7. Proof of Claim 4473

8. Notice of Transfer of Claim Pursuant to F.R.B. P. 3001 (E) (2) or (4)

9. Notice of Assignment of Claim

10. Omnibus Objection of Creditor Trustee to Certain Administrative, Priority And Unsecured Claims; Memorandum of Points & Authorities in Support Thereof

11. Proof of Service of Omnibus Notice of Creditor Trustee's Objections to Certain Administrative, Priority and Unsecured Claims; and Omnibus Objections of Creditor Trustee to Certain Administrative, Priority, and Unsecured Claims; Memorandum of Points & Authorities in Support Thereof

12. Omnibus Notice of Creditor Trustee's Objections to Certain Administrative, Priority and Unsecured Claims

13. Order Re July 29, 2002, Hearing Re: Omnibus Objections of Creditor Trustee to Certain Administrative, Priority and Secured Claims

14. Omnibus Objections of Creditor Trustee to Certain Unsecured Claims (Set Three); Memorandum of Points & Authorities in Support Thereof

15. Omnibus Certificate of Service of Creditor Trustee to Certain Unsecured Claims (Set Three); Memorandum of Points & Authorities in Support Thereof

16. Omnibus Notice of Hearing of Creditor Trustee to Certain Unsecured Claims (Set Three); Memorandum of Points & Authorities in Support Thereof

17. Response to the Omnibus Objection to Certain Claims (Set Three)

18. First Amended Joint Plan of Reorganization of AgriBioTech, Inc., Las Vegas Fertilizer Co., Garden West Distributors and Geo W. Hill & Co., Inc.

19. Order Confirming First Amended Joint Plan of Reorganization of AgriBioTech, Inc., Las Vegas Fertilizer Co., Garden West Distributors and Geo W. Hill & Co., Inc.

SHEA & CARLYON, LTD.
233 S. Fourth Street, Suite 200
Las Vegas, Nevada 89101
(702) 471-7432

20. Stipulation and Order Approving Withdrawal of AT&T's Administrative Claim.

Dated this 23 day of April, 2003

Respectfully submitted,

*Shawn W. Miller*

Shawn W. Miller
SHEA & CARLYON, LTD.
233 S. Fourth Street, Suite 200
Las Vegas, Nevada 89101


Malhar S. Pagay
PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.
Three Embarcadero Center, Suite 1020
San Francisco, California 94111

*Counsel for Anthony H.N. Schnelling, Trustee of the AgriBioTech Creditors Trust*

SHEA & CARLYON, LTD.
233 S. Fourth Street, Suite 200
Las Vegas, Nevada 89101
(702) 471-7432